# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DJAVON HOLLAND | CRIM. NO. 21-cr-00871 (PGS)<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on motions to (1) suppress the arrest warrant dated November 10, 2021 (ECF No. 133); (2) dismiss the indictment for lack of delegated authority (ECF No. 133-2); and (3) dismiss the indictment for outrageous government conduct (ECF No. 133-4). To support these motions, Defendant Holland, pro se, asserts two arguments.

First, Holland argues that since there were no firearms involved in the alleged commission of the crime (possession with the intent to distribute), agents of the Bureau of Alcohol, Tobacco and Firearm and Explosives ("ATF") lacked statutory authority to act; and therefore, the arrest warrant and indictment should be dismissed. More specifically, Holland argues that—at some point during the investigation - ATF agents determined that there were no firearms involved, and Holland's case was purely an illegal controlled substances case. According to

1

Holland, ATF's role at that point should have been terminated because ATF lacked statutory authority to pursue an illegal drug case.

Holland's second argument is that the indictment should be dismissed because it is allegedly based on outrageous government conduct since the ATF agents subjected him to "five-months . . . [of] extensive mental coercion to convince Mr. Holland to commit the alleged crimes". (T31:14-24).

I.

Holland's argument that the ATF lacks the statutory authority to pursue this case lacks merit under the circumstances. As such, the motions to suppress the arrest warrant and the indictment for lack of delegated authority are denied.

Initially, the ATF investigation commenced on information from a confidential informant that the criminal activity involved both firearms and narcotics. (T22:4-15). The Government represented at oral arguments that recorded conversations produced to Holland specifically discuss firearm suppliers; in one case, Holland used a separate phone to call a firearms supplier. (*Id.* at 10-15).

Holland argues that ATF should have closed its investigation when the case focused on narcotics, and ATF should have referred their work to a different agency. From a practical standpoint, this makes little sense. One court in our District concluded:

2

> Congress has specifically authorized the ATF to spend government funds to: (i) conduct undercover investigative operations as are necessary for the detection and prosecution of criminal activity, (ii) establish and operate business entities as part of such undercover operations, and (iii) use proceeds from such undercover operations to offset any reasonable expenses incurred in the course of the operations. *U.S. v. Fortuna*, No. 12–636, 2013 WL 1737215 at *2 (Apr. 22, 2013 D.N.J.) (internal citations omitted).

As such, ATF is vested with broad authority to investigate "criminal activity" beyond firearms. The regulations also confirm the statutory authority for ATF to act. One section authorizes ATF to "[i]nvestigate, administer, and enforce the laws related to alcohol, tobacco, firearms, explosives, and arson, and perform other duties as assigned by the Attorney General, including exercising the functions and powers of the Attorney General under" provisions of law related to firearms. 28 C.F.R. § 0.130(a). Since the statute is liberally construed regarding the scope of ATF's activities beyond firearms, participation in this case is well within the statutory mandate.

II.

Holland's second argument is that the indictment should be dismissed because of the outrageous conduct of ATF agents. Holland describes the outrageous conduct in conclusory terms rather than articulating a factual basis. For instance, he asserts that a five-month campaign of "extensive mental coercion" (T.31:14–24); but he provides no facts to support his claim. Further, Holland

alleges the outrageous activity as ATF "over involv[ing] itself" in the investigation and ATF "choos[ing] to initiate contact with" him and "lure him" to New Jersey. (ECF No. 133-4 at 29-31). Again, as noted above, Holland does not state any underlying facts to demonstrate his claim.

"An outrageous government conduct defense examines whether a defendant's due process rights have been violated because the government created the crime for the sole purpose of obtaining a conviction." *United States v. Tolentino*, 486 F. App'x 286, 288 (3d Cir. 2012) (internal citations omitted). The Third Circuit has noted that "[a]lthough the defense of outrageous government conduct is 'often invoked by defendants, [it] is rarely applied by courts.'" *Tolentino*, 486 F. App'x at 288 (internal citations omitted); see also *United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993) ("The banner of outrageous misconduct is often raised but seldom saluted.").

Here, Holland fails to show any facts that demonstrate outrageous conduct. This motion is denied.

## ORDER

IT IS on this ___ day of October, 2023;

ORDERED that the motion to suppress the arrest warrant (ECF No. 133) is denied; and it is further

4

ORDERED that the motion to dismiss the indictment for lack of delegated authority (ECF No. 133-2) is denied; and it is further

ORDERED that the motion to dismiss the indictment for outrageous government conduct (ECF No. 133-4) is denied.

_____
PETER G. SHERIDAN, U.S.D.J.