UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DJAVON HOLLAND | CRIM. NO. 21-cr-00871 (PGS)<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Mr. Holland's motion to identify the true name, current and former addresses, and other materials related to confidential informant, "CI-1," also known as "CI-2230." (ECF No. 116). The other materials referred to above include, but are not limited to: police reports, criminal records, payments from the Government to CI-1 as a reward, FBI and NCIC print-outs, government files, and other miscellaneous documents.

The Court has reviewed the parties' submissions and heard oral argument on September 13, 2023. For the reasons discussed below, the motion (ECF No. 116) is reserved, but alternative relief is granted. That is, the Court shall conduct an in-camera hearing where the Government shall produce documents and a witness who can explain CI-1's involvement in law enforcement operations with regard to Mr. Holland's investigation(s). See *United States v. Jiles, 658 F.2d 194* (1981). Mr. Holland's motion wherein he seeks identification of any other informants is denied.

1

I.

From around August 2, 2021 through around August 9, 2021, members of the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") received information that Djavon Holland ("Mr. Holland") engaged in narcotics trafficking between Virginia and New Jersey. (ECF No. 1 at ¶ 1). ATF learned that Ocean County law enforcement had purchased large amounts of methylenedioxymethamphetamine ("MDMA") and heroin from Mr. Holland using confidential source "CS-1". (*Id.*).

On or about August 12, 2021, CS-1 made telephonic contact with Mr. Holland to arrange a meeting between CS-1 and a confidential informant, "CI-1", for the purpose of purchasing heroin. (*Id.* at ¶ 2). Later that day, Mr. Holland drove to New Jersey allegedly to meet with CI-1 at the pre-arranged location. (*Id.* at ¶ 3). There, Mr. Holland supplied CI-1 with forty bricks of heroin in exchange for $3,200. (*Id.*) At that meeting, Mr. Holland allegedly agreed to supply CI-1 with future requests for narcotics. (*Id.*). Further, Mr. Holland allegedly stated that he used to sell narcotics in the state of Delaware to fund his legitimate businesses. (*Id.*) After that meeting, CI-1 turned the purchased heroin -- totaling approximately 390 grams and twenty bricks -- over to ATF. (*Id.* at ¶ 4).

Around August 20, 2021, CI-1 made telephonic contact with Mr. Holland and arranged a meeting for the purpose of purchasing fifty grams of pure heroin. (*Id.* at

¶ 5). Later that day, Mr. Holland allegedly drove to New Jersey for the purpose of meeting with CI-1 at a prearranged location. At the meeting, Mr. Holland supplied CI-1 with approximately fifty grams of heroin in exchange for $4,500. (*Id.* at ¶ 6). After the meeting CI-1 transferred control of the purchased heroin to ATF. (*Id.* at ¶¶ 6-7).

During the first week of November 2021, CI-1 made telephonic contact with Mr. Holland. (*Id.* at ¶ 9). Mr. Holland then allegedly traveled to New Jersey to attend a prearranged meeting. (*Id.* at ¶¶ 9–10). On or about November 10, 2021, Mr. Holland allegedly drove to New Jersey where he met with CI-1 and "UC-1," an undercover law enforcement officer. At that meeting, Mr. Holland allegedly provided CI-1 and UC-1 with 300 grams of heroin in exchange for $15,000. (*Id.* at ¶ 10). After that meeting, CI-1 ceded control of the heroin to law enforcement. (*Id.* at ¶ 11).

The three-count indictment filed on November 17, 2021 lists these three transactions in separate counts -- two for the distribution of heroin (Counts One and Three) and one for the distribution of fentanyl (Count Two). (ECF No. 10 at 2–3).

Mr. Holland moves for the disclosure of CI-1's identity and related information. The Government argues that the informant's identity should not be disclosed under *Jiles*. (T3:1–T6:16 (citing *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981)).

## II.

The informer's privilege, or the government's qualified privilege to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law" (*Rovario v. United States*, 353 U.S. 53 (1957) (citation omitted), is well established in this circuit. *E.g.*, *Mitchell v. Roma*, 265 F.2d 644 (3d Cir. 1959); *United States v. Helms*, No. 19-928, 2022 WL 4300185, at *8 (D.N.J. Sept. 19, 2022); *Mesadieu v. Martinez*, No. 18-842, 2023 WL 3052331 (D.N.J. April 24, 2023). The privilege is "intended to protect the public interest in effective law enforcement." *Rovario*, 353 U.S. at 59. This privilege may be overcome when the "disclosure of [the informant's] identity is essential to assure a fair determination of the issues." *Id.* at 60–61. *Rovario* lays a framework to determine when disclosure is necessary. "[T]he first step in determining whether the identity of an informant must be disclosed is to ascertain what need, if any, the defendant has alleged for disclosure." *Jiles*, 658 F.2d at 197 (3d Cir. 1981).

After determining whether such need exists, the Third Circuit evaluates the situation with principles grounded in *Rovario* to evaluate whether disclosure is necessary. *Id.* Specifically, the *Jiles* court enumerated four situations in which the Government may be required to disclose an informant's identity: "(1) the [informant's] possible testimony was highly relevant; (2) it might have disclosed an

4

entrapment; (3) it might have thrown doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged." *Id.* The *Jiles* court presented further guidance in the application of these principles, stating that there might be several situations where a court is presented with a situation that may tip the balance either way. The *Jiles* court wrote:

> First, the court may be presented with an extreme situation, such as that in *Rovario* itself, in which the informant played an active and crucial role in the events underlying the defendant's potential criminal liability. In these cases, disclosure and production of the informant will in all likelihood be required to ensure a fair trial. At the other end of the spectrum, are the cases in which the informant was not an active participant or eyewitness, but rather a mere tipster. In such cases, courts have generally held that the informant's identity need not be disclosed. A third group of cases falls between these two extremes and it is in this group [e.g., the confidential informant was a witness but not participant] that the balancing becomes most difficult.

*Id.* at 196–97 (internal citations omitted). Out of the above, the first scenario is understood to be situations where the informant was an active participant, and possibly an exculpatory witness for the defendant. *United States v. Vaughn*, No. 14-23, 2016 WL 155041 at *2 (D.N.J. Jan. 12, 2016). Overall, however, "[w]hether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62.

5

## III.

In his papers, Mr. Holland enumerates why the disclosure of CI-1's identity is necessary. He says the information is necessary for "the purpose of his entrapment defense; investigative bias; pretrial motions; [he seeks] a chance to call the informants as a witness; [and] to authenticate [through testimony] unrecorded social media and telephone conversations." (ECF No. 116 at 15). At oral argument, Mr. Holland stated that the specific need for the disclosure is "[the confidential informant] is the main reason of the inducement to entrapment." (T7:3 - 11). More specifically, Mr. Holland points to the timeline of the conversations with CI-1 to demonstrate this need. Mr. Holland stated at oral argument: "The Government -- first of all, this was a joint investigation between, the Ocean County Prosecutor's Office and the ATF. And they used a number [ . . .] of unrecorded calls, Facebook calls, social media calls, for numerous . . . months with this confidential source. That is the whole source of entrapment. So if we look at everything from the beginning of the investigation then the -- that's where the entrapment lies at." (*Id.*). Mr. Holland further stated that CI-1 is "the whole reason that everything began. For five months he was calling, for five months he was texting, for five months he did this, according to the police reports, on unrecorded lines. He's been calling and texting. And, you know, those is highly relevant, it's highly relevant to the entrapment defense." (T3:10–15).

The Government, on the other hand, argues that the informant's identity does not need to be disclosed under *United States v. Jiles*, contending that this information is protected under the informer's privilege. (T3:1–T6:16 (citing *Jiles*, 658 F.2d 194)). Further, the Government asserted that it has safety concerns regarding the confidential informant given Mr. Holland's history and the facts in this case. (T6:9–15). The Government also represented that it does not intend to call CI-1 as a witness in its case, but if it did, the Government would comply with its disclosure obligations. (T5:21–T6:1).

Here, Mr. Holland has stated a specific need for this information. Specificity is defined both by why the information is needed and how this information relates to that need. *See United States v. Vastola*, 670 F.Sup 1244, 1268–69 (D.N.J. 1987); *United States v. Tiller*, No. 14-699-6, 2016 WL 868340, at *2 (D.N.J Mar. 7, 2016); *United States v. Alvarez-Carillo*, No. 21-394, 2023 WL 27347, at *2 (M.D. Pa. Jan. 3, 2023). Mr. Holland has explained why he needs this information—he intends to call CI-1 as an exculpatory witness based on controlled substance transaction and his conversations with CI-1; and this testimony may bolster Holland's entrapment defense. Having stated that need, the Court follows the *Jiles* procedure. Since this case most likely falls within the first of the Third Circuit's enumerated situations -- where an informant's testimony is highly relevant -- the Court must balance Holland's need against the security of the informant.

Since Mr. Holland is pro se, and he has only asserted broad conclusory reasons without any underlying facts about the substance of his conversations with CI-1, the in-camera hearing should be conducted before the *Jiles* balancing test is considered. As such, to fairly determine this matter, an in-camera proceeding should first be undertaken.

An appropriate order follows.

### ORDER

IT IS on this 16th day of October, 2023;

**ORDERED** that the Court reserves on Mr. Holland's motion to identify CI-1 (ECF No. 116) until after the in-camera hearing is concluded; and it is further

**ORDERED** that the Government shall produce at an in-camera hearing, a witness who has knowledge of CI-1's involvement in law enforcement operations relating to the investigation of Mr. Holland commencing five months before August 12, 2021 (first controlled substance transaction); as well as all documents and information relating to CI-1 within the government's possession for the same time period. The hearing will be conducted in person on November 21, 2023 at 11:30 a.m.; and it is further

**ORDERED** that the motion (ECF No. 116) is denied with respect to all other confidential informants other than CI-1.

_____
PETER G. SHERIDAN, U.S.D.J.