UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DJAVON HOLLAND | Crim No. 21-871 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon two motions by Defendant Djavon Holland: (1) a motion under Federal Rules of Criminal Procedure ("Rule" or "Rules") 29 and 33 (ECF No. 279); and (2) a motion to revoke an order of detention (ECF No. 285.) The Government opposes both motions. (ECF Nos. 284, 290.) For the reasons set forth below, these motions are denied.

**I.      BACKGROUND**

In a three-count Superseding Indictment, Defendant Djavon Holland ("Defendant") was charged with knowingly and intentionally possessing with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide ("fentanyl") on August 12, 2021 (Count One); August 20, 2021 (Count Two); and November 10, 2021 (Count Three). (*See* ECF No. 28.) While his release conditions were modified several times prior to trial due to family circumstances, Defendant was released to home detention pending trial. (*See* ECF Nos. 7, 48, 89, 103.)

Prior to trial, the presiding trial judge—the Honorable Peter G. Sheridan (ret.)—decided several motions in limine. One of the motions in limine surrounded the admissibility of Defendant's previous criminal convictions, one of which was Defendant's guilty plea and

subsequent October 19, 2020 conviction for possession with intent to manufacture or distribute a controlled substance in violation of Delaware Code § 4752. ("Defendant's 2020 Drug Distribution Conviction".) The Government sought to admit this evidence under Federal Rule of Evidence 404(b). (ECF No. 199 at 3–9.) On April 2, 2024, Judge Sheridan initially denied this request. (*See* ECF No. 233.)

Defendant proceeded to trial *pro se* with the assistance of stand-by counsel, Assistant Federal Public Defenders Benjamin West ("West") and Michael Thomas ("Thomas"). (*See* ECF Nos. 225, 267.) During trial, several evidentiary issues arose. One of these issues surrounded the admissibility of evidence relating to Defendant's 2020 Drug Distribution Conviction. At trial, pursuant to 404(b), the Government sought to introduce evidence in the form of a witness from Delaware, Master Corporal Jeffrey Ballinger of the Delaware State Police, as well as the judgment and conviction from Defendant's 2020 Drug Distribution Conviction; this evidence was subsequently admitted. (*Id.* at 725:05–731:12; 824:3–5; 829:04–08.)

On April 11, 2024, West moved for an acquittal pursuant to Rule 29 upon which the Court reserved—renewing his motion again on April 12, 2024. (*See* ECF Nos. 245, 246.) Judge Sheridan denied the motion. In denying the motion, he stated the following:

> [T]he Government submitted information into evidence . . . and it showed more than sufficient evidence [] upon which a jury could convict Mr. Holland beyond a reasonable doubt. So to me, the motion, when you look at it, I couldn't see any reason why I would dismiss the case at that point in time. So based on the first motion at the end of the government's case, I would dismiss it just based on that grounds, that there was sufficient evidence in the record upon which the jury could find beyond a reasonable doubt that Mr. Holland was guilty of the crimes charged.

(*Id.* at 1077:20–1079:14.)

Following a nine-day jury trial, on April 15, 2024, Defendant was found guilty of Counts Two and Three of the three-Count Superseding Indictment. (*See* ECF No. 262.) The Court declared a mistrial on Count One of the Superseding Indictment because the jury could not come to a unanimous decision. (*See id.*) The Government "forwent" a retrial on Count One. (ECF No. 284 at 2.) In light of the verdict, on this same day, Judge Sheridan revoked Defendant's bail *sua sponte*. (*See* ECF No. 254.) Defendant was remanded into custody. (*See id.*)

At that point, Defendant moved for the appointment of counsel. (*See* ECF No. 267.) Thomas was appointed by Order of the Court on April 16, 2024 to serve as Defense Counsel. (*Id.*) The case was reassigned to the undersigned on June 12, 2024. (*See* ECF No. 280.) The following day, on June 13, 2024, the Honorable Jessica S. Allen, U.S.M.J. held a bail review hearing. (*See* ECF No. 281.) Judge Allen denied Defendant bail, noting that Defendant was "no longer a pretrial detainee in the true sense[]" and that Defendant's continued application and detention were governed by § 3143(a). (ECF No. 289 ("Bail Tr.") at 30:01–05.)

After receiving multiple extensions, Defendant's Motion pursuant to Rules 29 and 33 ("Motion for Acquittal") was filed on May 28, 2024.[1] (*See* ECF No. 279.) The Government opposed the Motion for Acquittal on June 28, 2024. (*See* ECF No. 284.) Defendant replied on August 2, 2024. (*See* ECF No. 288.) On July 13, 2024, Defendant filed his Motion for a Revocation of the Order of Detention ("Motion for Revocation"). (*See* ECF No. 285.) After receiving an extension to respond to the Motion for Revocation, the Government responded on August 14, 2024. (*See* ECF No. 290.) Defendant's sentencing before the undersigned is currently scheduled for October 29, 2024.

---

[1] Because these extensions were granted by Judge Sheridan, the Court will not address arguments that this Motion for Acquittal was filed out-of-time. (ECF No. 284 at 3–4.)

Thus, before the Court are both the Motion for Acquittal and the Motion for Revocation.

## II. LEGAL STANDARD

Under Rule 29(c)(2), a court "may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). Evidence is to be reviewed in the light most favorable to the prosecution. *See United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001) (internal citations omitted). The Court must not usurp the role of the jury "'by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury.'" *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)); *see also United States v. Brown*, No. 22-cr-108, 2022 WL 16855129 (D.N.J. Nov. 10, 2022). "Accordingly, a sufficiency of the evidence claim imposes a 'very heavy burden' on the defendant." *United States v. Curry*, No. 19-cr-00677, 2022 WL 445541, at *1 (D.N.J. Feb. 10, 2022) (internal citations omitted).

Under Rule 33, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. This is a broader standard than Rule 29. "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d. Cir. 2002) (internal citations and quotations omitted)). Such motions are not favored and should be granted "'sparingly and only in exceptional cases.'" *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

A court may review an order of detention under 18 U.S.C. § 3145(b), and a court holds "discretionary authority to release [a] defendant if the necessary statutory criteria are met." *United States v. Wilson*, No. 17-cr-0077, 2017 WL 1351399, at *2 (D.N.J. Apr. 7, 2017). 18 U.S.C. §

4

3143(a)(2) creates a presumption of detention where a defendant has been found guilty under the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) and faces a sentence of ten years or more. *United States v. Tyler*, No. 22-cr-413, 2022 WL 4104217, at *2 (D.N.J. Sept. 8, 2022); *see also United States v. Williams*, 903 F. Supp. 2d 292, 293 (M.D. Pa. 2012) (noting that "[p]ursuant to 18 U.S.C. § 3143(a)(2), the court *must* detain a person found guilty of certain offenses pending sentencing. One of those offenses is 'an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances . . . .'" (emphasis added)).

However, under this provision, a court may order a defendant's release pending sentencing if the judicial officer finds (1) "there is a substantial likelihood that a motion for acquittal or new trial will be granted" or "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person;" and (2) "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2)(A) and (B). A Defendant may also prevail if they show that there are "exceptional reasons" why his "detention would not be appropriate." 18 U.S.C. § 3145(c). Thus, "[w]hen read in conjunction with § 3143(a)(1), the language of § 3145(c) permits a judicial officer to release defendant upon a showing by clear and convincing evidence that defendant is not likely to flee or pose a danger to the safety of any other person or the community, and that there are exceptional reasons why detention pending sentencing is inappropriate." *Wilson*, 2017 WL 1351399, at *2. At post-conviction, a defendant "no longer has a substantive constitutional right to bail pending sentencing." *United States v. Madoff*, 316 Fed. App'x 58, 59 (2nd Cir. 2009) (citations omitted).

5

## III. DISCUSSION

### A. MOTION UNDER RULE 29

Defendant advances four separate arguments under Rule 29: (1) that the Government has not "disproven" Defendant's defense of entrapment; (2) the Government did not meet its burden of proof on chain custody; (3) that the United States Supreme Court decision, *Chapman v. United States*, 500 U.S. 453 (1991) was "wrongly decided;"[2] and (4) that Defendant should be "acquit[ted] as a matter of law" with regards to Count One. (*Id.* at 2–3.) For the reasons below, Defendant's motion for an acquittal under Rule 29 is denied.

The Court addresses Defendant's first two arguments: that the Government did not "disprove" Defendant's defense of entrapment and that the Government did not meet its burden of proof on chain of custody. To convict Defendant of possession with intent to distribute fentanyl on August 20, 2021 and November 10, 2021 as charged in Counts Two and Three of the Superseding Indictment, the Government was required to prove the following about each respective Count: (1) the defendant possessed a mixture or substance containing a controlled substance; (2) the defendant possessed the controlled substance knowingly or intentionally; (3) the defendant intended to distribute the controlled substance; and (4) the controlled substance contained fentanyl. *See* Third Circuit Model Criminal Jury Instructions, 6.21.841A. With respect to Defendant's claims that the Government failed to disprove entrapment, the Government put on its case over the course of seven days—including seven witnesses and a multitude of electronic evidence comprised of video surveillance and audio recordings of Defendant participating in drug

---

[2] Defendant argues that the Supreme Court wrongly decided *Chapman*. *See Chapman*, 500 U.S. at 460 (holding that the weight of a total drug mixture, rather than the weight of the pure substance, was controlling when calculating a drug's weight for the purposes of the sentencing enhancement set forth in 21 U.S.C. § 841(b)(1)(B)). To this argument, the Court notes only that, as a lower court, this Court is bound by the clear dictates set forth by the Supreme Court, and Defendant's arguments on this basis fail.

related activity. (*See* ECF Nos. 240, 241, 242, 243, 244, 245, 246.) The jury considered the evidence and determined that the Government had met its burden after carefully deliberating for two days. At that point, a unanimous jury convicted Defendant of Counts Two and Three, but it was hung—and thus did not convict Defendant—on Count I. (*See* ECF No. 262.)

In addition, Defendant's argument specifically fails because the Court instructed the jury in its closing instructions on the issue of entrapment. The Court noted on entrapment, among other instructions, the following: "if you find that the [G]overnment proved beyond a reasonable doubt that it did not induce Holland to commit the offense, then you should find that there was no entrapment and you need not consider this offense any further." (Trial Tr. at 1126:15–18.) Indeed, the Jury Verdict sheet clearly stated in the first line: "Having considered all the evidence submitted by the United States and Holland—*as well as Holland's defense*—we, the Jury, unanimously find: . . ." (ECF No. 262 at 1) (emphasis added). The jury found that the Government proved its case with respect to Counts Two and Three and found Defendant guilty. The Court will not usurp the role of the jury. *See Flores*, 454 F.3d at 154 (internal citations omitted). The Defendant's argument, at its essence, is that he simply disagrees with the jury's verdict. This argument is insufficient. *See United States v. Bado,* No. 15-cr-37, 2017 WL 2362401, at *5 (E.D. Pa. May 30, 2017), *aff'd*, 764 F. App'x 284 (3d Cir. 2019) (In the Rule 33 context, noting that "Defendant's disagreements with the jury's verdict do not legal error make.")

In terms of Defendant's claims regarding chain of custody, among the evidence presented at trial was testimony of Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent Matthew Quigley and Forensic Chemist Mikaela Romanelli which established the chain of custody for the drugs in question. (*See, e.g.*, Trial Tr. at 88:08–89:17; 95:02–99:13; 138:01–141:24; 146:12–24; 156:05–158:14; 160:08–16; 319:25–324:17; 682:04–17; 688:21–689:10;

695:13–15; 695:24–696:09; 698:17–19; 699:03–12; 701:05–07; 703:12–14.) Additionally, the Court addressed the issue of chain of custody head-on in its final instructions, instructing the jury on the following:

> Chain of custody. You may consider any defects in determining the authenticity of the controlled substances and packaging and what weight to give it. The [G]overnment must prove beyond a reasonable doubt that the controlled substances and packaging were those which were found at the time of the arrest.

(*Id.* at 1120:13–18.) Again, the jury considered this evidence and returned a verdict of "guilty" on Counts Two and Three. (*See* ECF No. 262.) Viewing the evidence in the light most favorable to the prosecution as the Court must, the Court finds that there was clearly sufficient evidence to convict him. Again, it is not the Court's place to usurp the role of the jury "'by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury.'" *Flores*, 454 F.3d at 154.

In addition to his Motion for an Acquittal on Counts Two and Three, Defendant asks that the Court enter a judgment of acquittal on Count One pursuant to Rule 29(c)(2). (ECF No. 279 at 2–3.) Rule 29(c)(2) provides that after jury verdict or discharge, ". . .[i]f the jury has failed to return a verdict, the court may enter a judgment of acquittal." Fed. R. Crim. P. 29(c)(2). As previously noted, the Superseding Indictment contains three Counts for violations of 21 U.S.C. 841(a)(1) and (b)(1)(B) on three different dates: August 12, 2021 (Count One); August 20, 2021 (Count Two); and November 10, 2021 (Count Three). (*See* ECF No. 28.) The jury returned a unanimous verdict on Counts Two and Three, but it could not reach a unanimous verdict on Count One. (*See* ECF No. 262.) Judge Sheridan declared a mistrial on Count One. (*See id.*) As discussed above, the Government put forth ample evidence over the course of seven days, comprised of video and audio recordings as well as witness and expert testimony. As the jury was presented with sufficient

evidence to allow the returning of a verdict on Counts Two and Three, the Court will not enter such an acquittal on Count One even though the jury failed to reach a verdict. *See United States v. Graves*, No. 06-95-01, 2007 WL 2461744, at *1 (E.D. Pa. Aug. 22, 2007) (denying defendant's motion for acquittal pursuant to Rule 29(c)(2) where the court declared a mistrial on one count but the Government had put forth sufficient evidence to prove beyond a reasonable doubt the elements of the offense). Defendant's request is denied.

### B.    MOTION UNDER RULE 33

Under Rule 33, Defendant advances one principal argument: his trial was unfair. In support of this proposition, Defendant states that (1) evidence of his prior conviction was admitted "without a limiting instruction" which meant that the evidence was considered for an improper purpose; (2) the trial judge improperly rejected Defendant's motion for a mistrial "when it became clear that the jury could not be impartial;" and (3) rulings during trial were improper. (ECF No. 279 at 2–3.)

Defendant's argument to the first point fails. Here, Defendant argues that Judge Sheridan erred in admitting evidence and failing to give a contemporaneous limiting instruction on same. This contention surrounds the admissibility of one of Defendant's prior drug convictions, specifically, Defendant's 2020 Drug Distribution Conviction. As previously stated, this was the subject of a motion in limine, (*see* ECF No. 199), which the Court initially denied. (*See* ECF No. 233.) At trial when reviewing this holding prior to allowing the testimony of Delaware State Police Officer, Master Corporal Jeffrey Ballinger, Judge Sheridan noted on the record that in his initial ruling, he believed the Government to be moving to introduce photographs of the drugs or of the arrest, and that he had "never thought that photos of drugs or photos of the arrest or things of that nature were going to be admitted. I never saw any of those photos . . . ." (Trial Tr. at 729:18–

730:22.) However, Judge Sheridan stated that he did not believe that he had ruled upon the admissibility of the underlying offense. When undertaking a Federal Rule of Evidence 404(b) analysis prior to admitting evidence of Defendant's 2020 Drug Distribution Conviction, Judge Sheridan stated the following:

> That in Delaware, the activity of Mr. Holland's activities could be brought into evidence under 404(b) where it talks about ["]other crimes and wrongs or acts,["] and it just said ["][P]rohibited uses. Evidence of other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.["]
>
> But then, two, it says, ["]the evidence may be admissible for another purpose such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.["]
> And then if it's a criminal case, you have to give notice that you're going to use that type of information. And we had the motion that was filed and things of that nature, so I think we've fulfilled those obligations.
>
> But here, Mr. Holland's activity in 2022 [sic], it seems to me it shows he has knowledge of what he's doing. It was – it may show there was a lack of accident when he undertook that activity. It shows his intent and things of that nature. Plus, it may show us, I guess, intent, knowledge, and absence of mistake, are all shown by this activity of Mr. Holland.
>
> So what I'll admit is the evidence of the conviction. So if there's a judgment or something of that nature, that may be admitted into evidence. And if the police officer talks just about the arrest, if he was there, and what happened, I'll allow that, and then—because it's very similar, I would imagine, to what happened here on two or three occasions.

(*Id.* at 729:18–731:03.) Judge Sheridan noted that he would deny the admission of any photos of the arrest or the drugs because Judge Sheridan believed that they would be "very prejudicial to Mr. Holland." (*Id.* at 730:23–731:06.) Judge Sheridan further noted that "we shouldn't prejudice Mr. Holland or confuse the jury as to what is in issue and what is not in issue as to the controlled dangerous substances." (*Id.* at 731:04–09.) At this point, Defendant did not request a limiting

instruction; instead, he maintained his objection to the introduction of this evidence and noted that an entrapment instruction should be given to the jury.[3] (*Id.* at 729:18–730:08.) The Court did not issue a limiting instruction at that time. Instead, it issued a limiting instruction in its final instructions. In its final instructions, the Court explained:

> Defendant's prior bad acts. You have heard testimony that Holland has a prior drug distribution conviction from October 19, 2020, where he pled guilty to possession with intent to manufacture or distribute a controlled substance in violation of Delaware Code Section 4752. This evidence of other acts was admitted only for limited purposes. You may consider this evidence only for the purpose of deciding whether Holland had the state of mind, knowledge, or intent necessary to commit the crimes charged in the superseding indictment and under the entrapment defense whether Holland was predisposed to commit the crime. Do not consider this evidence for any other purpose.

(*Id.* at 1133:04–15.)

In support of Defendant's argument that the Court's failure to issue a contemporaneous limiting instruction—even where such an instruction was not requested—was error, Defendant points to *United States v. Davis*, 726 F.3d 434 (3d Cir. 2013). (ECF No. 279 at 3.) In *Davis,* the Third Circuit evaluated the admission of a defendant's prior drug convictions in order to prove knowledge or intent under Federal Rule of Evidence 404(b). *Davis*, 726 F.3d at 442. The Third Circuit noted that the district court erred because, *inter alia*, the court failed to issue a contemporaneous limiting instruction where one had been requested. *Davis*, 726 F.3d at 446. However, *Davis* is distinguishable from the case before the Court today because the *Davis*

---

[3] In Defendant's reply, he argues that a limiting instruction was requested contemporaneously, citing testimony from the third day of trial on April 4, 2024 at Trial Transcript page 197. (ECF No. 288 at 1.) The claim that Defendant "requested a limiting instruction in this case when the Court permitted testimony related [to] 404b evidence to come in trial[]" is incorrect. (ECF No. 288 at 1.) Upon review of the record, the cited material again appears to be referencing Defendant's request for the issuance of an entrapment instruction prior to the final jury instructions and a limiting instruction relating to the introduction of discussion of "molly" and "firearms" evidence rather than a limiting instruction on Defendant's 2020 Drug Distribution Conviction. (*See* Trial Tr. at 175:22–176:10; 189:20–199:16.)

11

defendant requested a limiting instruction *at the time*; the evidence in the record clearly shows that the Defendant made no such request, instead, renewing his request for an entrapment instruction.[4] (Trial Tr. at 729:18–730:08.) As pointed out by the Government, the Third Circuit addressed this issue directly in *United States v. Moffitt*, 601 F. App'x 152, 155 (3d Cir. 2015). (ECF No. 284 at 11.) In *Moffitt,* the Third Circuit—in rejecting defendant's argument that a district court erred by failing to issue a contemporaneous limiting instruction—held that that defendant "fail[ed] to identify any authority that held it is reversible error to issue a limiting instruction at the close of a case when a defendant ha[d] failed to request or object to the lack of a contemporaneous instruction." *Moffitt*, 601 F. App'x at 155. Like in *Moffitt*, the Court here issued a clear limiting instruction at the conclusion of trial and no contemporaneous limiting instruction was requested. This argument is without merit.

Defendant's next argument—that Defendant's motion for a mistrial was improperly denied when it became "clear" that the jury could not be impartial—also fails. For this argument, Defendant refers to a jury communication to Judge Sheridan on April 4, 2024. (ECF No. 279 at 3.) In that communication, the jury expressed its discomfort with the fact that *pro se* Defendant was parking in the same parking lot as the jury. Judge Sheridan explained the contact from the jury to the parties outside of the presence of the jury by saying that the jurors were "concerned that Mr. Holland has been parking in the same lot where they park and they have been going out to the parking lot in the evening and there's no—there's no security there. So, I said that I would request

---

[4] Indeed, Thomas—speaking for Defendant—stated the following:
> Mr. Holland has designated me to answer this on his behalf. As we have stated previously, one, we maintain our objection, but also to the extent that the evidence comes in, we also maintain that the entrapment instruction should be given at this time.

(Trial Tr. at 726:15–20.)

security for that reason, for them to walk to the lot." (Trial Tr. at 175:02–06.) Initially, Thomas—speaking for Defendant—suggested that Defendant park in a different parking lot. (*Id.* at 175:08–09.) The following day, West—designated by Defendant to speak for him—moved for a mistrial on this basis.[5] (*Id.* at 344:04–345:14.) The Government opposed Defendant's motion, noting both its objections to arguments by stand-by Counsel and noting that there was no indication that the jury could not be fair and impartial. (*Id.* at 345:16–346:08.) Judge Sheridan denied Defendant's motion, noting that these safety issues came up "many times during . . . other trials[]" and that area surrounding the parking lot was generally unsafe. (*Id.* at 346:21–24.) Judge Sheridan further noted that the jurors had been sworn-in. (*Id.* at 347:01–10.) On April 8, 2024, Judge Sheridan supplemented his findings on the record, stating the following:

> And the jury, when I was in there, did express concerns about security because Mr. Holland was parked in the same lot they did. And, first of all, the lot itself is always a security problem because it's–it's never safe to be in that premises without security around. It's off the main street. There's a park where anybody that goes by it can see drug deals going on from time to time. And there's many unsavory characters around that parking lot. So security is always an issue there. But here, the jury also felt there was a security issue with Mr. Holland in that area. Here, in the courtroom, Mr. Holland has been on pretrial release. He has no handcuffs or foot braces on. There's no cloth around the bottom of the table because there's no need for it. And Mr. Holland has been able to use the dais when he wants, or podium, so he's been able to move around the courtroom. There is a [Court Security Officer] that's sitting next to me or next to the table, but that's just ordinary security proceedings or procedures. So, generally, I think we've handled that security concern issue fairly well under the circumstances. And I didn't think there was anything more that the Court could do. The juries are always concerned about security when they go out to that lot. It's just a very unsafe spot. And we've never rectified it. It's despicable that the government hasn't figured that out, but it's true.

---

[5] Specifically, West stated that he believed that the jury's request was "an indication of juror bias, which would—if they have a fear of being in a parking lot in broad daylight with Mr. Holland, that, you know, we're concerned that we don't have an impartial jury." (*Id.* at 344:19–22.) Alternately, West requested for a voir dire of the jurors. (*Id.* at 345:05–14.)

13

(Trial Tr. at 487:03–488:02.) During trial, the Government stated that it had "[n]o comments" on this situation. (*Id.* at 488:05–06.) Defendant, referring to himself in the third-person, commented on the situation as follows:

> First, I would like to say thank you for, you know, clarifying that on the record. It was very disturbing, you know, when I heard about it, because only thing I'm trying to do is just park my car and get in the courthouse and present my case, that's it. I've never spoken to any juror. I never looked at any juror in any way. I just park my car there because that was the only parking at the time I knew around here, so that was the reason why I parked there. But I thank you for – I could understand the jury's concern, you know, with seeing me, you know, out there parking. But, you know, I thank you for understanding that, you know, even though it may have been a security concern, you know, Mr. Holland is in no way, shape, or form, a threat to them or, you know, a threat to their security. Mr. Holland is just here trying to get to court. So I thank you for clarifying that.

(*Id.* at 488:10–24.) During the course of these proceedings, there was no suggestion that Defendant approached or otherwise engaged with anyone on the jury—only that Defendant parked his car in the same public parking lot.

Now, Defendant argues that he was prejudiced by this jury inquiry. The Government argues that Judge Sheridan adequately addressed this situation by ensuring that the security concerns were addressed and that these security concerns were not prejudicial to Defendant. (ECF No. 284 at 12.) The clear language of Rule 33—along with its standard—dictates that the jury's fears about parking in the same parking lot as Defendant during the course of trial, without more, do not create the need for a new trial. Under Rule 33, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. While this is a broader standard than Rule 29, a district court can order a new trial if it "believes that 'there is a serious danger that a miscarriage of justice has occurred . . . .'" *Johnson*, 302 F.3d at 150. (internal citations omitted). Here, Judge Sheridan received a communication from the jury which he communicated to the

14

parties. (*E.g.*, Trial Tr. at 175:02–06; 487:03–488:02.) Judge Sheridan noted that general safety concerns were and are persistent around the District Courthouse in Trenton. (*Id.*) Stand-by counsel had the opportunity to place their arguments on the record which they did. (*Id.* at 344:04–345:14.) For his part, Defendant personally thanked the trial judge and sought no remedy. (*Id.* at 488:10–24.) Accordingly, the trial proceeded. Overall, given that motions under Rule 33 are not favored and should be granted "'sparingly and only in exceptional cases[,]'" *Silveus*, 542 F.3d at 1005 (internal citations omitted), the Court sees no reason to deviate here as there is no basis to do so.

Finally, Defendant argues that his motions during trial were improperly denied. (ECF No. 279 at 3–4.) The Court agrees with the Government on this point that Defendant's arguments are vague. (*See* ECF No. 284 at 13.) The extent of Defendant's arguments on this point are as follows:

> [R]ulings made throughout the trial require a new trial be ordered. This includes, but is not limited to, the grounds for a judgment of acquittal listed above, the Court's rulings on Mr. Holland's motion to preclude expert testimony, the [C]ourt's overruling of Mr. Holland's objections during the [G]overnment's closing, the Court's rulings on Mr. Holland's objections during witness testimony, Mr. Holland's objections to the [G]overnment's motions in limine, Mr. Holland's objections to the Court's instructions, Mr. Holland's requests to admit evidence, and more.

(ECF No. 279 at 3–4.) The Court agrees with the Government that "[s]imply listing the Court's rulings" without any citation to the record or without any other evidence does not meet the burden of proof. (ECF No. 284 at 13.) Even when reviewing the record, the Court cannot identify a decision of which Defendant is complaining. Indeed, the Court notes that—upon review of the

record—many of the decisions throughout trial of which the Defense broadly complains were favorable to Defendant.[6] Lacking any specificity, no additional discussion is warranted.

### C.    MOTION FOR REVOCATION

Before the Court is also Defendant's Motion for Revocation under 18 U.S.C. § 3145(b). On June 13, 2024, Judge Allen reviewed Defendant's detention which had been ordered *sua sponte* by Judge Sheridan ahead of Defendant's sentencing. (*See* ECF No. 283.) At the hearing, Defense Counsel proposed the following conditions for Defendant's pre-sentencing release:

> 1. $100,000 unsecured appearance bond with co-signer Danielle Ward
> 2. Pretrial services supervision
> 3. That he be placed on stand-alone electronic monitoring
> 4. Release to the Third-Party custody of Danielle Ward
> 5. Travel restricted to Maryland and New Jersey
> 6. Maintain current residence

(ECF No. 285 at 2.) Further, Counsel for Defendant argued that Defendant "has lifelong ties to New Jersey and Pennsylvania, and no passport. He therefore poses no serious risk of flight—or at least no risk that cannot be sufficiently ameliorated by location monitoring." (*Id.* at 3.) Defense

---

[6] For example, Defendant specifically drew comparison between himself and Jesus Christ when arguing his entrapment defense. In relevant part, in his closing argument, the Court permitted Defendant to argue—over the Government's objection—as follows:

> With the five minutes, I just want to, you know, just, if I can give, you know, if I may, a little story about one of the greatest entrapments that ever took place in history. In actuality, that story is in this courtroom right now. This story is in this courtroom right now. And that story, you know, is very relevant to the foundation of the United States of America, because our founding fathers actually left it to us. And each and every day, you know, in every courtroom across America, every government office, every Public Defenders Office, there is this story just sitting there and it's being unread. It's one of the most powerfullest [sic] law books in our land. That law book is sitting right here today. That law book is right there on the corner of that table right there. In that law book, it has one of the most powerfullest [sic] stories about entrapment. There's a story about a man named Jesus in there.

(Trial Tr. at 1084:04–1086:06.)

16

Counsel argued that Defendant should be released to "get his affairs in order, as he prepares for sentencing, and those affairs include, of course . . . his partner for over 10 years, his children, who he loves very much, and who would motivate him." (Bail Tr. at 8:08–11.) For its part, the Government opposed Defendant's release, noting that Judge Sheridan had made findings on the record that Defendant lacked a quality of truthfulness and that given Defendant's residence in Maryland, the Court was not confident that Defendant could be relied upon to appear. (*Id.* at 14:13–15:07.) The Government also pointed out that Defendant has an absconding history—noting a 2014 incident where he "absconded from parole and a bench warrant was issued." (*Id.* at 15:14–16.) Overall, Judge Allen found that it was "undisputed that the [D]efendant was found guilty of Counts [Two] and [Three] of the [S]uperseding [I]ndictment charging him with distribution of controlled substance . . . ." (*Id.* at 31:16–19.) She noted that the provisions set forth in 3143(a)(2) providing for release pending sentence did not apply to the case before her. (*Id.* at 32:12–24.)

As a preliminary matter, the Court notes that there is a statutory presumption in favor of detention accorded by 18 U.S.C. § 3143(a)(2). *Tyler*, 2022 WL 4104217, at *2. Per the Pre-Sentencing Report ("PSR"), Defendant's total offense level is a 34 with his sentencing guidelines range calculated between 262 to 327 months. (PSR ¶ 108.) The clear language of 18 U.S.C. § 3143(a)(2) states that where a defendant is "awaiting imposition or execution of sentence," the court "shall" order that he be detained unless certain criteria are met. 18 U.S.C. § 3143(a)(2). *See Williams*, 903 F. Supp. 2d at 293. As stated by Judge Allen, it is clear that the other criteria under § 3143(a)(2) are not met given that there is no likelihood of acquittal or for a new trial, (*see supra* at 5–16), and that there is no question that a term of imprisonment has been recommended to be imposed. (Bail Tr. at 32:14–16.) Accordingly, Defendant's claims for relief under § 3143(a)(2) fail. *United States v. Wilson*, No. 17-cr-0077, 2017 WL 1351399, at *2 (D.N.J. Apr. 7, 2017).

Thus, when examining Defendant's other possible basis for relief—that an exceptional basis for his release exists under 18 U.S.C. § 3145(c)—Defendant has not met his burden because he has failed to show by clear and convincing evidence that his circumstances are "exceptional." Specifically, the extent of the record on this point is that Defendant wishes to "get his affairs in order" pending sentencing. (Bail Tr. at 23:13–14.) This is not an exceptional circumstance and fails to show how Defendant's situation is different from other defendants subject to presumed detention. *United States v. Epstein*, No. 14-cr-287, 2016 WL 1435717, at *2 (D.N.J. Apr. 12, 2016) (noting that exceptional circumstances "require[d] something out of the ordinary to distinguish the defendant's case from those of other defendants subject to mandatory detention.") Defendant's offer of proof—combined with Defendant's history of flight with respect to other criminal proceedings, (Bail Tr. 15:08–16), and the presiding trial judge's finding that Defendant "lacks a quality of truthfulness" (Trial Tr. at 1112:05–18)—weighs against any alteration to Defendant's order of detention. *Cf. Williams*, 903 F. Supp. 2d at 293 (finding that exceptional circumstances existed where Defendant's wife required a surgery to repair an umbilical hernia and where defendant's employment income was the sole means of income). This motion is also denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Acquittal (ECF No. 279) and Motion for Revocation (ECF No. 285) are **DENIED.** An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: September 16, 2024